UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

V.                                              CRIMINAL ACTION NO. 3:08cr170-DPJ-FKB

CASSANDRA FAYE THOMAS

**ORDER**

This healthcare fraud case is before the Court on the following motions: Government's First Motion in Limine to preclude evidence of benefits to Medicare and Medicaid Beneficiaries [30], Government's Second Motion in Limine [31], Defendant's Motion in Limine concerning Newsletters and Local Policies [33], Defendant's Motion in Limine concerning Opinion Testimony [34], Defendant's Motion in Limine concerning State Licensing [35], Defendant's Motion in Limine to Exclude Improper Hearsay concerning Arrest and Other Records [36], Defendant's Motion in Limine concerning Medical Discipline Record [37], Defendant's Motion to Dismiss Count 6 of the Indictment for Failure to Allege a Crime [55], and Defendant's Amended Motion to Dismiss Based on the Rule of Lenity [56].  The Court has considered the parties' submissions and the applicable authority and finds as follows:

I.      Background

The Government charges Defendant Cassandra Faye Thomas with a variety of federal offenses related to reimbursements for allegedly unwarranted Medicare and Medicaid benefits. The disputed claims arise from in-home physical therapy services performed through Central MS Physical Medicine, Inc. ("Central MS"), a physical therapy clinic Thomas owned and operated. Thomas now seeks dismissal of all counts, or alternatively dismissal of Count VI under 18

U.S.C. § 641, and otherwise moves in limine for the exclusion of various evidence. The Government likewise moves in limine to exclude evidence.

II.     Analysis

    A.     Motions to Dismiss

        1.     Amended and Restated Motion of Cassandra Thomas for Dismissal Based on "Rule of Lenity," Reliance Throughout Indictment on Non-Existent Licensure Requirement, and Lack of Clarity Concerning "Direct Supervision" Regulatory Requirement. [56][1]

The Indictment charges Thomas with, among other things, seeking healthcare reimbursements for services performed by unlicensed or otherwise unqualified employees and employees Thomas did not directly supervise. According to Thomas, the licensure and supervision requirements were not clarified until November 2004—one month after she closed her clinic. She contends that the Indictment should therefore be dismissed based on the rule of lenity.

The Indictment appears to include other charges and theories that are not susceptible to Thomas's argument—like the charge that she sought reimbursement for physical therapy services that were neither medically reasonable nor necessary. Indictment ¶ 33(c). For this reason, dismissal of the entire case would not be appropriate. Whether the rule of lenity ultimately requires dismissal of certain charges can be addressed during the course of the trial as was the case in *United States v. Peterson*, No. 2:09cr43-KS-MTP.

---

[1]As the title indicates, this motion supercedes Thomas's original motion to dismiss [18] which is denied as moot.

     2.  Thomas's Motion to Dismiss Count 6 of the Indictment for Failure to Allege a Crime Under 18 U.S.C. § 641 [55]

Thomas alternatively seeks dismissal of Count 6 of the Indictment. That count contains the following averments:

> Beginning in or around March 2002, and continuing without interruption until or around February 2005 . . . Cassandra Faye Thomas . . . did steal, purloin, and knowingly convert to their own use more than $1000 in funds belonging to the United States by receiving Medicare program funds from the Centers for Medicare and Medicaid Services, to which the defendant knew she was not entitled.

The Indictment charges that these acts violated Sections 641 and 2, Title 18 United States Code. Section 641 is transgressed by anyone who "embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States." Simply stated, Thomas argues that the alleged act of submitting fraudulent claims—i.e., a fraudulent scheme—is not included in the conduct § 641 criminalizes.

Thomas relies on *Morissette v. United States*, where the United States Supreme Court examined the history of § 641. 342 U.S. 246 (1952). But that decision addresses the specific intent element of § 641, and its more general observations about § 641 contradict Thomas's position. The *Morissette* Court observed that § 641 was broadly worded to encompass culpable conduct that does not squarely fit the common law definitions of each term found in that statute. *Id*. at 266 n.28. Significantly, the Court remarked: "The history of § 641 demonstrates that it was to apply to acts which constituted larceny or embezzlement at common law and also acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions." *Id*. It also explained that "[s]tealing, having no common law definition to

restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another." *Id.*; *see also United States v. Rehak*, 589 F.3d 965, 973-74 (8th Cir. 2009) ("In *Morissette*, the Supreme Court recognized that section 641 intended to fill 'the gaps or crevices on the law on larceny-type offenses.' The statute reaches all instances where 'one may obtain wrongful advantages from another's property.'") (citations omitted).

In *United States v. Aguilar*, the Fifth Circuit applied *Morissette* to deny an appeal based on an argument similar to Thomas's. 967 F.2d 111 (5th Cir. 1992). Aguilar was convicted of passing a bad check at a military exchange. He claimed on appeal that the indictment failed to charge an offense under § 641 because writing bad checks is not a false representation and therefore not a "wrongful taking" from the government. The Fifth Circuit noted the breadth of the term "steal," and held that Congress intended for § 641 to include offenses like passing bad checks. *Id.* at 114 (citing *Morissette*, 342 U.S. at 271; *Boone v. United States*, 235 F.2d 939 (4th Cir. 1956)). Like the present case, Aguilar's fraudulent scheme deprived the government of its property.

Other circuits have reached the same conclusion on facts analogous to the present case. *See*, *e.g.*, *United States v. Herrera-Martinez*, 525 F.3d 60, 61 (1st Cir. 2008) (holding that § 641 applied to defendant charged with making false claims for federal benefits); *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974) (finding that § 641 applies to "larceny by trick")

(citing *Morissette*, 342 U.S. at 271, other citations omitted).[2]  The Indictment adequately pled the elements of an offense under § 641.  Thomas's motion is therefore denied.

  B.  Motions in Limine

    1.  Government's Motion in Limine [30] to Preclude Evidence of Health Benefits to Medicare and Medicaid Beneficiaries

The Government seeks to exclude evidence related to any medical benefits received by patients of Central MS.  The alleged health benefits are relevant, however, because the Government contends that Thomas violated 18 U.S.C. § 1347—which criminalizes knowing and willful schemes to defraud any health care benefit program—when she allegedly sought reimbursement for services that were "not medically reasonable or necessary."  *Id.* ¶ 33(c); *see also* 42 U.S.C. § 1395y(a)(1)(A) (2006)(excluding coverage for services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury"); 42 C.F.R. § 411.15(k)(1) (2008).  The extent, if any, to which patients benefitted from the services is probative, at least in a circumstantial way, to the reasonableness and necessity of the diagnosis.  And it is also probative of whether a medical condition existed under the guidelines.  This probative value is not substantially outweighed by the factors listed in Rule 403.  Thomas must, however, offer the evidence in a manner that is related to the propriety of the disputed reimbursements.  Thomas may not use the evidence to garner good will, appeal to sympathy, or to seek nullification.  Fed. R. Evid. 402, 403.  For these reasons, the Government's motion is denied except to the extent that Thomas is limited in the manner in which the evidence may be used.

---

  [2]Although it addresses the intent element, the Fifth Circuit's recent opinion in *United States v. Dowl* includes a general discussion of § 641's breadth and collects cases indicating that a fraudulent scheme would fall within § 641.  619 F.3d 494, 501 (5th Cir. 2010).

    2.  Government's Second Motion in Limine [31]

      a.  Reference to *United States v. Pearson, et al.*

This is not the Government's first case against Thomas.  Earlier this year, a jury acquitted Thomas on all counts in *United States v. Pearson,* No. 2:09cr43KS-MTP, a case involving similar charges arising out of a different clinic.  The Government seeks to exclude Thomas's acquittal in the *Pearson* trial.  Thomas agrees that she will not offer any evidence related to *Pearson* without first apprising the Court, so the motion is granted without prejudice to Thomas's right to revisit the issue.  Thomas notes, however, that overlapping witnesses exist and that reference to the first trial may be necessary.  If a party or witness must refer to the first trial—perhaps during cross-examination—they must refer to it as "an earlier proceeding."  All witnesses must be instructed to follow this order.  The motion is otherwise granted as uncontested.

      b.  Potential Consequences of a Conviction.

The Government seeks to exclude evidence related to the consequences of a guilty verdict.  During the *Pearson* trial, Thomas's counsel argued that she would not risk her license for the amounts involved in the alleged crime.  This information is probative of Thomas's intent—a key issue in this case.  And the probative value is not substantially outweighed by risk of unfair prejudice.  The argument complies with Rule 402 and is not precluded by Rule 403.

  Thomas's closing argument during *Pearson* is a different issue.  Counsel urged the jury to take the matter seriously because Thomas faced the loss of her career as a doctor.  Suggesting that Thomas will lose her license, livelihood, family, etc., is not probative of any issue properly before the jury and is instead an improper plea for sympathy.  Fifth Circuit Pattern Instructions

1.04 and 1.20 tell the jury to completely disregard sympathy, the consequences of the verdict, and potential punishment.  Thomas may neither appeal to the jury's sympathy nor seek nullification.  The evidence of her livelihood lacks any probative value when placed in this context, and to the extent any exists, it is substantially outweighed by the risk of unfair prejudice.  Fed. R. Evid. 402, 403.  The motion is granted to the extent it seeks to exclude arguments of the sort addressed in this paragraph.

          c.      The Existence Number and Age of Defendant's Children

The Government seeks to exclude evidence related to Thomas's children.  But the jury will know that she has children because the Court always asks the jury panel whether they know the defendant's family members.  This inquiry is even more important in this case because Thomas is from Jackson, Mississippi, which accounts for a large percentage of the venire.  The Court can also envision certain contexts where the existence of children might be properly admitted into evidence, and the issue is not so prejudicial as to require an in-limine order.  Thomas is precluded, however, from using the children as an appeal for sympathy or for nullification.  Such statements would quickly create a risk of unfair prejudice that substantially outweighs their probative value.  Fed. R. Evid. 403.  The motion is granted to this limited extent without prejudice to the Government's right to challenge the evidence at trial.

          d.      Demographics of Patient Population

The Government seeks to exclude evidence that the areas Thomas serviced were "dangerous."  Both parties agree that the availability of home health agencies in a community is one potentially relevant factor in determining whether Thomas complied with Medicare program

instructions.  But the Government contends that Thomas lacks a good faith basis to ask the question because all witnesses in the *Pearson* trial testified that the areas were serviced.

The motion is granted without prejudice.  It appears from the *Pearson* trial that no evidence supports Thomas's contention.  If that remains the case, then it would be improper for counsel to suggest otherwise.  The ruling is without prejudice, however, to Thomas's right to revisit the issue during trial.  If Thomas intends to offer evidence to support her theory—she has no such burden—then the issue will require a closer look.  Also, the Court remains cognizant of Thomas's Sixth Amendment confrontation rights and will be in a better position to evaluate the issue after relevant witnesses have testified on direct examination.

>    3.   Thomas's Motion to Exclude Newsletters and Local Policies Purporting to Impose Legal Requirements Beyond those Authorized by Statute or the C.F.R. [33]

Thomas seeks to exclude newsletters and other materials that reference or interpret the subject billing provisions.  She offers no relevant authority, and the Fifth Circuit has previously rejected similar arguments in relevant contexts.  Starting with relevance, Thomas's intent is a core issue in this case, and the disputed exhibits are directly relevant to her state of mind.  *United States v. Brown*, 553 F.3d 768, 790–91 (5th Cir. 2008).  Thomas also argues that the evidence is misleading because the Government may use it to suggest that a violation of the standards found in the disputed exhibits constitutes criminal conduct.  The Government may not premise criminal liability on violation of these materials.  *Id*. at 791.  But the indictment charges Thomas under federal statutes, and the Government may rely on the materials to "clarify[] the scope and contour of criminal laws." *Id.* at 792.  The witnesses will be subject to cross-examination, and if the Government uses the exhibits properly, the probative value of the evidence is not

substantially outweighed by the risk of unfair prejudice or confusion.  Fed. R. Evid.  403; *see also United States v. Abdallah*, 629 F. Supp. 2d 699, 748–49 (S.D. Tex. 2009) (Rosenthal, J.,) (denying motion for new trial based on admission of contractor's Medicare manual and collecting cases).  Thomas may revisit this issue during trial, and she is invited to submit an appropriate limiting instruction.

>     4.    Defendant's Motion in Limine to Exclude Certain Improper Opinion Evidence Related to Matters of Law and the Standard of Medical Care [34]

Thomas seeks to exclude "opinion testimony relating to the meaning of federal regulations and statutes, the law concerning state licensing requirements, and the appropriate standard of care for the medical treatment in this case, particularly where any statement of the standard of care contradicts the statutes governing billing."  Def.'s Mot. [34] at 1.

Although Thomas offers a passing objection under Rule 702, she has not challenged the expert's credentials, methodology, or whether his opinions are otherwise reliable.  She argues instead that the testimony is not helpful to the jury.  For example, Thomas seeks to exclude evidence related to the standard of care, claiming that it would confuse the jury by imposing a civil standard upon this criminal matter.

Precedent exists to allow testimony similar to that offered by the Government.  *See Abdallah*, 629 F. Supp. 2d at 750 (finding expert testimony on Medicare "rules and regulations" was "both relevant and reliable" (citing *United States v. Strange*, 23 Fed. App'x. 715, 717 (9th Cir. 2001) (observing that testimony regarding Medicare regulations and reimbursement procedures was "entirely appropriate for an expert"); *United States v. Universal Rehabilitation Services, Inc.*, 1996 WL 297575, at *10 (E.D. Pa. May 31, 1996) (permitting expert testimony by

Medicare contractor employee who offered opinion as to whether the documents submitted by provider supported claims for payment by Medicare))).  But the Government suggests that this issue is better decided once the Court sees its context in light of the evidence.  The Court agrees.  Although many of the disputed opinions appear relevant and admissible, others may present a closer call.  Moreover, the Court is somewhat unclear on the meaning of the Government's statement that it would not pursue the licensing theory.  Accordingly, the issue will be addressed at trial.  If the Government intends to mention the expert during its opening statement, it must first address the issue outside the presence of the jury.

> 5. First Motion in Limine of Dr. Cassandra Thomas, Seeking Exclusion of Evidence Relating to State Licensing [35]

The Court needs to hear from the Government regarding its licensing theory before ruling on this motion.  The issue will be addressed prior to trial.

> 6. Thomas's Motion in Limine to Exclude Improper hearsay Concerning Arrest and Other Records of Apparent Employees of Central Mississippi [36]

Thomas seeks to exclude National Crime Information Center records reflecting the criminal histories of individuals formerly in her employ.  While she argues that the NCIC printouts contain hearsay statements, the Government responds that it will introduce the evidence through testimony or properly authenticated documents from which the NCIC printouts were compiled.  The Government's anticipated approach appears to resolve the hearsay concern, but Thomas also suggests that the criminal histories are irrelevant, unfairly prejudicial, and constitute improper character evidence.  Given the potentially prejudicial nature of the histories, the Court concludes that Thomas's motion should be granted without prejudice.  As the

Government notes, the Court will be in a better position to evaluate the objections when it has a better feel for the context.

       7.       Thomas's Motion in Limine to Exclude Evidence Prohibited by Rule 404 [37]

Thomas seeks to exclude evidence of a State Board of Health disciplinary proceeding against her in 1997. The Government agrees that the evidence is irrelevant and that it will not offer it unless Defendant opens the door. The motion is therefore granted.

    C.    Jury Instructions

The parties participated in a substantially similar charge conference during the *Pearson* trial. That process should enable them to quickly identify areas of agreement. Thus, although not this Court's normal practice, the parties are ordered to confer and collectively submit jury instructions. The submission should include those instructions that can be submitted by agreement and alternative language where disagreement exists. To assist in this process, the Court will email its standard criminal instructions to the parties when it dockets this order.

III.    Conclusion

For the foregoing reasons, Thomas's Motions to Dismiss [55, 56] are denied. The Government's First Motion in Limine [30] is denied, and its Second Motion in Limine [31] is granted in part and denied in part. Thomas's Motion to Exclude Newsletters and Policies [33] is denied, while her Motions to Exclude Hearsay [36] and to Exclude Medical Discipline Records [37] are granted. Thomas's Motion Concerning Opinion Testimony [34] is granted without prejudice.

**SO ORDERED AND ADJUDGED** this the 3rd day of November, 2010.

                                            s/ *Daniel P. Jordan III*
                                            UNITED STATES DISTRICT JUDGE